UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ANGELA LOWRY,

        Defendant.
                                   /

Ticket No. 3162104

Magistrate Judge R. Steven Whalen

**OPINION AND ORDER**

Defendant Angela Lowry is charged with possession of marijuana on federal property, in violation of 41 C.F.R. § 102-74.400. Before the Court is her motion to dismiss.

On December 15, 2015, while Ms. Lowry was at the Custom and Border Patrol Office in Detroit, Michigan, a trained drug-sniffing dog alerted to the presence of controlled substances in her car. An administrative search revealed 5.1 grams of marijuana in the car. Ms. Lowry, who has a history of migraine headaches, possesses a valid registry identification card issued under the Michigan Medical Marijuana Act ("MMMA"), M.C.L. § 333.26422 *et seq*. She argues for dismissal of the charge against her because (1) she falls within an express exception to criminal liability where a controlled substance is prescribed by a doctor, and (2) the Consolidated Appropriations Act of 2016 prohibits her prosecution.

### A.   The Michigan Medical Marijuana Act

The MMMA, which went into effect on December 4, 2008, was enacted as the result of a voter-approved initiative. *See People v. Redden*, 290 Mich.App. 65, 76, 799 N.W.2d 184 (2010). The MMMA does not legalize marijuana, and possession of marijuana remains a misdemeanor under Michigan law, punishable by imprisonment for not more than one year, or a fine of not more than $2,000.00, or both. M.C.L. § 333.7403(2)(d). *See People v. Brown*, 297 Mich.App. 670, 674, 825 N.W.2d 91 (2012)("[T]he MMMA does not abrogate state criminal prohibitions related to marijuana"). Rather, § 4 of the MMMA, M.C.L. § 333.26424(a), immunizes a qualified holder of a medical marijuana card, who is in compliance with the MMMA and who possesses no more than 2.5 ounces of marijuana, from arrest, prosecution, or penalty under Michigan law:

> "A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana...."

*See People v. Redden*, 290 Mich.App. at 104 (concurring opinion of O'Connell, J.) ("Instead of describing an affirmative right to grow, possess, or use marijuana, § 4 simply indicates that registered qualifying patients, primary caregivers, and physicians are protected from arrest, prosecution, or penalty if they meet the specific requirements set

forth.").

Ms. Lowry was found in possession of 5.1 grams of marijuana, well under the 2.5 ounce limit in the MMMA.[1] Under § 4 of the MMMA, her arrest and prosecution under Michigan law would be precluded. The question before this Court is whether she may be prosecuted under federal law for possession of marijuana on federal property.

### B. The Federal Regulation

41 C.F.R. § 102-74.400 proscribes possession of "narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines" on federal property "[e]xcept in cases where the drug is being used as prescribed for a patient by a licensed physician...."[2] Ms. Lowry argues that under the MMMA, a physician's "written certification," which is required for the issuance of a medical marijuana card, qualifies as a "prescription" under § 102-74.400.[3]

Not so. Marijuana is classified as a Schedule I drug under both federal and Michigan law. *See* 21 U.S.C. §812, Schedule I(c)(10); M.C.L. § 333.7212(1)(c). As

---

[1] One ounce equals 28.35 grams. Therefore, Ms. Lowry had approximately .18 ounces of marijuana.

[2] This provision is narrower than 21 U.S.C. § 844, which criminalizes possession of marijuana regardless of whether or not the offense occurs on federal property.

[3] M.C.L. § 333.26423(m) defines "written certification" as "a document signed by a physician, stating all of the following: (1) The patient's debilitating medical condition. (2) The physician has completed a full assessment of the patient's medical history and current medical condition, including a relevant, in-person, medical evaluation. (3) In the physician's professional opinion, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's debilitating medical condition or symptoms associated with the debilitating medical condition."

defined by 21 U.S.C. § 812(b)(1), a Schedule I drug "has a high potential for abuse," "has no currently accepted medical use in treatment in the United States," and lacks "accepted safety for use...under medical supervision." Thus, unlike controlled substances classified under Schedules II through V, Schedule I substances–including marijuana–may not be dispensed by way of a medical practitioner's prescription. *See* 21 U.S.C. § 829; *People v. Redden*, 799 N.W.2d at 199 (concurring opinion of O'Connell, J.). *See also United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 491 ("Whereas some other drugs can be dispensed and prescribed for medical use...the same is not true for marijuana.").

41 C.F.R. § 102-74.400 very specifically exempts drugs that are "*used as prescribed* for a patient by a licensed physician" (emphasis added). Unlike a doctor's prescription, a certification under the MMMA does not set forth dosages, frequency of use, or other directions for use of marijuana. The MMMA does not implicitly reclassify marijuana as other than a Schedule I controlled substance. Instead, under the statute, "a physician merely 'certifies' that an individual would likely 'benefit' from using marijuana to alleviate pain, nausea, or other symptoms, while leaving it to the patient to register under the act and to self-regulate the quality and quantity of marijuana the patient uses." *Redden*, at 799 N.W.2d 203. This certification does not fall within the § 102-74.400 prescription exception, either literally or by analogy. "[T]he MMMA has no effect on federal law, and the possession of marijuana remains illegal under federal law, even if it is possessed for medicinal purposes in accordance with state law." *United States v. Hicks*,

722 F.Supp.2d 829, 833 (E.D. Mich. 2010), citing *Gonzales v. Raich*, 545 U.S. 1, 27 (2005).

### C. The Consolidated Appropriations Act

Section 542 of the Consolidated Appropriations Act of 206, Pub. L. 114-113, § 542, provides that the Department of Justice is not to expend funds that interfere with the ability of states, including Michigan, to implement their own laws "that authorize the use, distribution, possession, or cultivation of marijuana."[4] Ms. Lowry argues that this provision bars her prosecution for possession of marijuana on federal property.

In support, she relies on an unpublished case from the Northern District of California, *United States v. Marin Alliance for Medical Marijuana*, 2015 WL 6123062 (N.D. Cal. 2015). That case involved the federal government's decade-long attempt to obtain an injunction against a medical marijuana dispensary that was operating pursuant to California law. Following the passage of the 2015 Appropriations Act, the court held that granting the government injunctive relief would impermissibly interfere with California's medical marijuana law. Describing in detail the strict statutory and regulatory requirements for dispensaries, including "72 conditions regulating every conceivable aspect of the time, place, and manner of the dispensary's operation," the court found that "this intricate legal framework 'implements' California's medical marijuana laws by allowing licensed patients to obtain medical marijuana from highly regulated non-profit

---

[4] Sec. 542 is a recodification of § 538 of the 2015 Appropriations Act, 128 Stat. 2130 (2014).

cooperative dispensaries." *Id*. at 4-5. The court held further that "[i]t defies language and logic for the Government to argue that it does not 'prevent' California from 'implementing' its medical marijuana laws by shutting down these same heavily-regulated medical marijuana dispensaries...." *Id*. at 5.

Ms. Lowry does not operate a medical marijuana dispensary in the State of Michigan. She is not charged with possession of marijuana under 21 U.S.C. § 844. She is charged specifically with possession of marijuana *on federal property*. "Indeed, nothing in the [Appropriation Act] suggests that Congress intended to affect the federal government's exercise of its police powers over federal land." *United States v. Chavez*, 2016 WL 916324 (E.D. Cal. 2016). *See also United States v. Silkeutsabay*, 2015 WL 2376170, at *2 (E.D. Wash. 2015)("The appropriations rider merely prevents the Department of Justice from using its 2015 fiscal year funds in a manner that interferes with certain conduct sanctioned by state medical marijuana laws. This rider did not modify or limit the reach of federal prosecutorial authority under the CSA...."). Unlike *Marin Alliance*, Ms. Lowry's prosecution under § 102-74.400 will not result in the closure of a single medical marijuana dispensary, nor does it abrogate the State immunity from prosecution provision of the MMMA as it applies to certified marijuana users who possess small quantities of marijuana on non-federal property in the State of Michigan. Her prosecution in no way interferes with the implementation of the MMMA, and thus does not run afoul of the 2016 Appropriations Act.

### D. Conclusion

For these reasons, Ms. Lowry's motion to dismiss is DENIED.

IT IS SO ORDERED.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 20, 2016

## CERTIFICATE OF SERVICE

    I hereby certify on July 20, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants July 20, 2016.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen
